UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

QUANEECHA JOHNSON, ET AL     *     CIVIL ACTION
    *
    *
VERSUS     *     NUMBER: 19-13949
    *
MARLIN N. GUSMAN, ET AL.     *
    *
    *     SECTION "F"(2)
    *

* * * * * * * * * * * * * * * * * * * * * * * *

## PLAINTIFFS' OPPOSITION TO DEFENDANT GUSMAN'S PARTIAL MOTION TO DISMISS, REC. DOC. 5

NOW COME the Plaintiffs, through undersigned counsel, who hereby file this Opposition to Defendant Gusman's Partial Motion to Dismiss under Rule 12(b)(6), Rec. Doc. 5. Defendant Gusman seeks dismissal of the federal civil rights claims against him in his official capacity and also in his individual capacity.[1]  With respect to the official capacity claim, Gusman asserts that he is effectively immune from such claims because a Compliance Director has been appointed at the jail.  However, a close reading of the *Jones* Stipulated Order, upon which Gusman's argument relies, and an understanding of the context in which that Order was entered, show that Gusman's novel argument should be rejected.  Defendant Gusman, in his official capacity, should not be rewarded with effective immunity from suit because he has been unable to bring the jail into compliance with the *Jones* Consent Decree, nor should civil rights plaintiffs be stripped of their right to seek compensation and vindication of their rights against Gusman when they are injured in the jail, which he is statutorily charged with managing.

---

[1]The Plaintiffs reserve their right to amend their Complaint should discovery reveal additional facts showing Gusman's personal involvement in the constitutional violation at issue here.  The Plaintiffs also note they have brought pendent state law claims under *respondeat superior* against Defendant Gusman.  Rec. Doc. 1 at ¶¶ 54-61. Gusman's current motion does not seek dismissal of those state law claims.

With respect to the individual capacity claim, the Plaintiffs' Complaint contains factual allegations which, taken as true, demonstrate a potential right to relief against Gusman in his individual capacity.  Given the ambiguities in the language of the Stipulated Order, Gusman's motion should be denied until there is discovery on Gusman's actual current role at the Orleans Parish Jail.  The Motion should be denied.

## I.  <u>FACTS</u>

Accepting the Plaintiffs' well-pleaded facts as true, the Complaint alleges Edward Patterson, an inmate at the Orleans Justice Center, died as a result of an overdose at the jail on or about December 1, 2018.  Rec. Doc. 1 at ¶ 25.  Although Mr. Patterson should not have been able to obtain and use illegal drugs while he was incarcerated, because of the longstanding and pervasive unconstitutional patterns, practices, and policies at the jail, Mr. Patterson was able to obtain contraband drugs **<u>twice</u>** in the course of one week at the OJC.  *Id.* at ¶ 12.  The second time he obtained the drugs, they resulted in his death.  The Complaint alleges that Mr. Patterson's tier was poorly staffed and monitored, with guards frequently absent from the tier for extended periods of time, meaning that the inmates would frequently be completely unsupervised.  *Id*. at ¶¶ 21-24.  This lack of supervision was a long standing and well-known problem at the jail.  *Id*. at ¶ 26-33.  Indeed, these staffing and supervision problems had previously resulted in another inmate dying from an overdose at the jail approximately twenty months prior to Mr. Patterson's death.  *Id*. at ¶ 28.  However, as alleged in the Complaint, Defendant Gusman failed to take adequate steps to address the unconstitutional conditions at the jail, even after the prior death, and this failure resulted in Mr. Patterson's death.  *Id.*

## II.  <u>STANDARD OF REVIEW</u>

Dismissal under Rule 12(b)(6) is disfavored and rarely granted.  *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).   Under the 12(b)(6) standard, all well-pleaded facts must be viewed in the light most favorable to the plaintiff.  *Hale v. King*, 642 F.3d 492, 498-99 (5th Cir. 2011) (en banc). Plaintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim.  *Id*. Courts generally confine their analysis under Rule 12(b)(6) to the complaint and its proper attachments, which "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"  *Id*. (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  The well-pleaded facts must permit the court to infer more than the mere possibility of misconduct.  *Id*.  Even if a plaintiff's complaint is found deficient under Rule 12(b)(6), the proper remedy is usually to allow the plaintiff to amend the complaint to cure any deficiencies, rather than dismissal with prejudice.  *Public Health Equip. & Supply Co. v. Clarke Mosquito Control Equip., Inc.*, 410 Fed. Appx. 738, 740 (5th Cir. 2010) (finding that district court erred in denying plaintiff's motion to amend complaint after dismissal under Rule 12(b)(6)).

## III.  <u>LAW AND ARGUMENT</u>

Defendant Gusman does not contend that the Plaintiffs have failed to allege sufficient facts to show a constitutional violation with regard to Mr. Patterson's death.  *See Complaint,* Rec. Doc. 1 at ¶¶ 17-23. 14-15, 24-35.  Nor does he argue that the Plaintiffs have failed to allege an unconstitutional pattern and practice at the jail.    *Id*. at ¶¶ 14-15, 24-35, 49-53.  *See also Crawford v. Gusman*,  17-cv-13397 (E.D. La. August 8, 2018),  2018 WL 3773407 at *4-5

(denying Gusman's Motion to Dismiss complaint containing similar allegations as the Plaintiffs' complaint).  Furthermore, the Plaintiffs have in fact alleged that Gusman is the final policymaker for the jail.  Rec. Doc. 1 at ¶ 6, 35.  But despite the sufficiency of the Plaintiffs' allegations, Gusman asks this Court to take judicial notice of the Stipulated Order in the *Jones* consent decree litigation and, on that basis alone, dismiss all federal claims against him in this matter, including the official capacity claim, without the opportunity for the Plaintiffs to conduct any discovery.  This Court should decline Gusman's request.

### 1.  The *Jones* Stipulated Order

As is well-known in this District, the *Jones* case involves a class-action request for injunctive relief regarding conditions of confinement at the Orleans Parish Jail facilities under Defendant Gusman's control ("OJC").  *See Jones et al. v. Gusman et al.,* EDLA # 12-cv-859. Because of the extraordinarily deficient conditions at those facilities, in June 2013 Judge Africk entered a Consent Judgment detailing the "longstanding and pervasive" problems existing at the facilities and setting forth detailed requirements for bringing the facilities into compliance with constitutional standards.  *Jones* at Rec. Doc. 466.  However, because conditions had not substantially improved at the jail after years of work, in April 2016, the *Jones* plaintiffs filed a Motion to hold Gusman in contempt of court for failing to comply with the Consent Judgment. Notably, the plaintiffs' Motion sought appointment of a federal receiver for the jail as a remedy for Gusman's contempt.  *Jones* at Rec. Doc. 1009.

As reflected in the *Jones* docket, Gusman opposed the Plaintiffs' motion, both on the papers and at an evidentiary hearing held in June 2016.  *Jones* at Rec. Doc. 1020.  At the same time, however, Gusman was attempting to negotiate a resolution of the contempt Motion with the plaintiffs.  As reflected in the Stipulated Order, the *Jones* parties presented evidence over the

course of six days at the hearing, which ultimately was not concluded. *Jones* at Rec. Doc. 1082 at p. 2. Instead, the parties, including Gusman, agreed to a negotiated resolution as set forth in the Stipulated Order. In order to "avoid continued litigation and appeals," the parties entered the agreement as a settlement of the issues the Plaintiffs had raised in their Motion for Contempt. *Id.*

As relevant here, the Stipulated Order provides that **the Sheriff** will appoint the Compliance Director from a list of candidates selected by the Plaintiffs and the City of New Orleans. Rec. Doc. 1082 at p.3. Furthermore, although the Compliance Director will have final authority to operate the OJC, the **"Compliance Director shall seek advice and/or approval from the Sheriff regarding all decisions that materially impact compliance with the Consent Judgment**, unless doing so would cause unreasonable delay, and otherwise regularly inform the Sheriff of jail operations." *Id.* The Sheriff and the Compliance Director are jointly responsible for informing the public of status of the jail. *Id.* at 5. The Order also required the Compliance Director to seek approval from the Sheriff of the remedial action plan the Director was directed to develop within 90 days of his appointment. *Id.* Moreover, the Compliance Director is required to "work closely and communicate regularly" with the Sheriff. *Id.* at 6. Finally, the Sheriff must jointly sign contracts with the Compliance Monitor. *Id.* at 13.

## 2. Gusman's Decision to Enter the Stipulated Order Does Not Entitle Him to Immunity from Liability in His Official Capacity.

There can be no dispute that Gusman voluntarily agreed to the entry of the Stipulated Order creating the Compliance Director position. The Order was in fact a settlement of the *Jones* plaintiffs' Motion for Contempt, Rec. Doc. 1082 at p. 2, and all of its terms were no doubt extensively negotiated between the *Jones* parties. If Gusman had not wanted to reach an agreed upon resolution, he could have continued to oppose the plaintiffs' contempt Motion at the evidentiary hearing, as he initially did. Instead, he opted to delegate via the Stipulated Order

some of this authority over the jail to the Compliance Director, who he in fact was entitled to choose and did choose from a list of candidates.   This Court should decline to hold that Gusman's agreement to enter the Stipulated Order came with the unmentioned fringe benefit that Gusman, in his official capacity as Sheriff of Orleans Parish, would be immune from § 1983 suits involving conditions at the jail.

Sheriffs in Louisiana are the "keepers of the public jail" in their parishes.   LA R.S. 15:704.   As such, Louisiana federal courts uniformly hold that the Sheriff is the final policymaker for the jail and can be sued under § 1983 in his official capacity for unconstitutional conditions at the jail.   *O'Quinn v. Manuel*, 773 F.2d 605, 609 (5th Cir. 1985).   However, the courts also recognize that Sheriffs can and do delegate their statutory authority to others to manage jails.   *See e.g., Nagle v. Gusman*, No. 12-1910 (E.D. La. September 2, 2016), 2016 WL 768588 at *8; *Thompson v. Ackal* 15–02288 (W.D. La. September 9, 2016), 2016 WL 1394352 at *6; *Rodrigue v. Morehouse Det. Ctr.*, No. 09-cv-985 (W.D. La. Sept. 28, 2012), 2012 WL 4483438, at *13  (holding that Sheriff lawfully "delegated the creation of policies and procedures governing LPNs to Dr. Smith [the jail's physician]").   In *Pembaur v. City of Cincinnati*, the Supreme Court confirmed that "authority to make municipal policy . . . may be delegated by an official who possesses such authority."   475 U.S. 469, 483 (1986).   However, regardless of whether policymaking authority is delegated by an official or a municipality, the municipality remains liable for official capacity claims brought either against the individual policymaker in his official capacity or directly against the municipality itself.   *See, e.g., Sanders-Burns v. City of Plano,* 595 F.3d 366, 373 (5th Cir. 2010) (noting that an official capacity claim against an individual is in reality a claim against the entity).   In other words, a municipality or an elected official cannot delegate away legal responsibility for their statutorily imposed duties.

In this case, Gusman's decision to agree to the Stipulated Order was akin to an agreement to delegate his statutory policymaking authority to another official to manage the jail. Indeed, Gusman is entitled to select the Compliance Director from a list of candidates, subject to the Court's approval. The Compliance Director is further required to consult and seek Gusman's approval for decisions that affect compliance with the Consent Decree, showing that Gusman maintains some personal involvement in the management of the jail. *Jones* Rec. Doc. 1082 at 3, 5. Although the Plaintiffs recognize that the Stipulated Order was not an ordinary act of delegation, it nonetheless remains the case that Gusman **chose** to enter the Stipulated Order after he negotiated its provisions. Even if the Compliance Director is making decisions at the jail, he is doing so pursuant to a delegation of authority from Gusman, meaning that Gusman, in his official capacity, remains amenable to suit for jail conditions.

Gusman's precise argument was squarely denied by the one court to have addressed it. In *Crittendon v. Gusman*, 17-512 (M.D. La. January 22, 2020), Judge Dick ruled as follows:

> To have official capacity responsibility under Section 1983 of the Civil Rights Act, there must be some policy, custom, or practice that has caused the constitutional violation. A statement, ordinance, regulation, or decision that is promulgated by the municipality's lawmaking officers or an official to whom the lawmakers have delegated policymaking authority. Those are the allegations in this case; that the officials, specifically that LeBlanc, Gusman, and the East Carroll Parish Sheriff Williams, have delegated some of those decision-making responsibilities and the implementation of policies and promulgations of policies. The Court finds there are sufficient allegations as to the policymaking of each of the defendants.

*Id*. at *2. Here, as in *Crittindon*, the Plaintiffs have alleged and the facts surrounding the Stipulated Order, as well as its language, show that Gusman is a policymaker who has delegated his policymaking authority. As in *Crittindon*, this Court should deny Gusman's motion.

There is also another reason to deny Gusman's motion. The Plaintiffs have alleged that the patterns, practices, customs and policies at the jail that resulted in Mr. Patterson's death (e.g.,

absence of staff, the presence of contraband, and the lack of supervision) are all longstanding and pervasive.  Indeed, these are some of the precise problems that led Judge Africk to enter the Consent Judgment in June 2013.  Even accepting as valid Defendant Gusman's argument regarding the Compliance Director (which the Plaintiffs do not), it remains the case that he was indisputably the final policymaker at the jail since his election in 2004 up until the Compliance Director was appointed in October 2016.  Gusman's actions and inactions during those 12 years led up to the unconstitutional conditions that continue to exist at the OJC to this day.  Gusman can and should be held responsible for the current conditions at the jail because the Compliance Director is simply attempting to fix the broken system he presided over for 12 years.  In short, the Compliance Director was appointed to fix what Gusman broke, and Gusman in his official capacity can be held responsible for the conditions that he created and allowed to fester at the OJC for 12 years.

Additionally, given Gusman's voluntary agreement to the Stipulated Order, the cases he cites in his Motion are distinguishable.  In both *Canney v. City of Chelsea*, 925 F. Supp. 58 (D. Mass. 1996), and *Fantasia v. Office of the Receiver*, 01-1079 (D.D.C. December 21, 2001), 2001 WL 34800013, the courts confronted a true receivership situation unlike that present here.  In *Canney*, the Massachusetts legislature had passed a state law that involuntarily stripped the Chelsea City government of all powers, authorities, and responsibilities.  The law formally placed the City in receivership and caused the appointment of a receiver that took over all City powers.  Similarly, in *Fantasia*, the court confronted a situation where another judge had exercised equitable powers to impose a receivership on the District of Columbia's Commission on Mental Health Services, over the objections of the District.  Because there was a true receivership situation presented in both these cases, the courts held that the defendants that were

in receivership could not be sued under § 1983 because they lacked the power to act in an unconstitutional fashion.

Here, in contrast, there is no involuntary receivership.  Instead, Gusman agreed to the entry of the Stipulated Order, through which he delegated his powers and responsibilities to the newly created Compliance Director position.  Indeed, the whole point of the Stipulated Order was to prevent the Court from involuntarily imposing a receivership on Gusman, which was the remedy the *Jones* plaintiffs had sought in their Motion for Contempt.  *Jones* Rec. Doc. 1009. Gusman, in his official capacity, should not be rewarded with effective immunity from suit because he came up with a way to stave off receivership.  Instead, because he voluntarily chose to delegate policymaking authority at the jail via the Stipulated Order, he remains subject to suit in his official capacity under § 1983 where conditions at the jail continue to deprive people, like the decedent in this case, of their constitutional rights.  Again, municipalities and entities cannot delegate away legal responsibility for their statutorily imposed duties.

This case is more similar to *Saint-Jean v. District of Columbia*, 74 F. Supp. 3d 274 (D.D.C. 2014), than it is to *Canney* or *Fantasia*.  Much like in this case, the court in *Saint-Jean* confronted a situation where a court had entered an agreed upon order appointing a "transportation administrator" to oversee a school district's transportation division.  Although the transportation administrator had broad authority under the order, he was still required to consult with the Superintendent of the school district.  Furthermore, and most notably, the defendant had agreed to the order in exchange for the plaintiffs' agreement to withdraw their motion to appoint a receiver.  *Id*. at 279.

After the appointment of the administrator, the *Saint-Jean* plaintiffs brought suit over their allegedly unconstitutional termination of employment from the school district.  The

defendant school district filed a motion to dismiss, arguing that it could not be sued under § 1983 because of the order appointing the administrator.  Much like Gusman, the school district argued that the transportation administrator was the "functional equivalent" of a receiver.  The *Saint-Jean* court rejected this assertion, noting that no case had ever held that a defendant obtains immunity from suit because the "functional equivalent" of a receiver had been appointed. Instead, only when a true receiver has been appointed will courts hold that a defendant cannot be sued under § 1983.  *Id.* at 279-80.

Exactly like *Saint-Jean*, the Compliance Director in this case is not in fact a receiver.  He is instead required to consult and seek approval for his decisions from Gusman, who is authorized to select the Compliance Director and who remains involved in the administration of the jail.  Simply because the Compliance Director has been held to enjoy judicial immunity as the "functional equivalent" of a receiver, does not mean that Gusman cannot be sued in his official capacity.  Because he chose to avoid receivership by agreeing to delegate his policymaking authority to the Compliance Director via the Stipulated Order, and because his actions and inactions over the course of 12 years led to the current unconstitutional conditions at the jail, Gusman's request for the same type of immunity from suit as is enjoyed by entities in actual receivership should be rejected.[2]

### 3.  The Plaintiffs' Complaint Alleges a Claim Against Gusman in his Individual Capacity.

For many of the same reasons, the Court should also find that the Plaintiffs have alleged sufficient facts to allege a claim against Gusman in his individual capacity.  As discussed above, Defendant Gusman is a policymaker for the Orleans Parish Sheriff's Office.  To establish

---

[2] At the very least, the Plaintiffs should be permitted to take discovery on Gusman's level of involvement at the OJC after the entry of the Stipulated Order.  Given the language in that Order, which clearly leaves room for Gusman to be involved in the management of the jail, granting the instant Motion to Dismiss without giving the Plaintiffs leave to conduct discovery would be improper.

individual liability against a policymaker like Gusman, the plaintiff must allege that (1) the supervisor failed to supervise or train a subordinate, (2) a causal connection existed between the failure to supervise or train and the violation of the plaintiff's rights, and (3) such failure to supervise or train amounted to gross negligence or deliberate indifference. *Hinshaw v. Doffer*, 785 F.2d 1260, 1263 (5th Cir. 1986).  Furthermore, a policymaker like Gusman can be held individually liable where he knew or <u>should have known</u> of unconstitutional policies effecting people within his custody. *Lawson v. Dallas County*, 286 F.3d 257, 264 (5th Cir. 2002) ("Unlike the deliberate indifference standard applied to individual employees, this standard [for policymakers] is an objective one; it considers not only what the policymaker actually knew, <u>but what he should have known</u>, given the facts and circumstances surrounding the official policy and its impact on the plaintiff's rights.  Therefore, constructive notice is adequate.") (emphasis added and citations omitted).  *See also Doe v. Taylor Indep. School Dist.*, 15 F.3d 443, 453 (5th Cir. 1994).

The Plaintiffs here have alleged that Gusman was personally aware of various unconstitutional policies and practices at the OPSO but failed to take the steps necessary to address them.  Specifically, at Paragraphs 27 to 29 of the Complaint, the Plaintiffs allege the following unconstitutional practices, of which Gusman was personally aware:

27. Numerous investigations, letters, reports and lawsuits have documented the unconstitutional conditions faced by inmates in OPSO custody, including inadequate staffing, failure to adequately monitor and supervise inmates, failure by staff to adhere to established and mandated guidelines, practices and procedures, and failure to provide adequate medical attention to inmates. This pattern of dereliction and neglect created an unconstitutional risk of harm to inmates and their safety, including Edward Patterson.

28. The defendants, knew, must have known or should have known of the conditions creating these unconstitutional risks of harm, but in fact have not taken adequate steps to remedy these deficiencies. In fact, less than twenty months prior

to Edward's death another inmate in OPSO custody was permitted overdose on illegal narcotics and died at OJC.

29. At the time of the detention of Edward Patterson by OPSO, the defendants knew, must have known or should have known of serious deficiencies in the policies, practices and procedures at the jail related to medical care, particularly after ingesting illegal narcotics. Defendants were also aware of the inadequate staffing and inadequate training and supervision of medical and correctional staff with regard to medical problems and emergencies of prisoners. Despite their knowledge of these serious deficiencies, the defendants failed to make necessary changes to the standing policies, procedures, training, supervision or staffing to provide Edward and others in their custody with adequate security supervision and treatment for serious medical concerns.

Rec. Doc. 1.

In *Crawford v. Gusman*, Judge Lemelle found very similar allegations to be sufficient at the Motion to Dismiss stage to state a claim against Gusman in his individual capacity. *See* 2018 WL 3773407 at *4-5 (denying Gusman's Motion to Dismiss complaint containing similar allegations as the Plaintiffs' complaint). Especially in light of the ambiguities in the Stipulated Order regarding Gusman's role at the jail, and Gusman's responsibility for his actions and inactions in creating the conditions at the jail since 2004, the Plaintiffs submit this Court should likewise find their allegations sufficient at this stage of the proceedings to permit the Plaintiffs' individual capacity claims to proceed to discovery.

## **CONCLUSION**

For these reasons, the Plaintiffs respectfully submit that Gusman's Motion to Dismiss should be denied.

Respectfully submitted,

**SANTANA & BLANCHARD, LLC**

/s/ Wesley J. Blanchard
**WESLEY J. BLANCHARD (#35047)**
ERIC J. SANTANA (#34970)
3500 N. Hullen St., Ste. 17K
Metairie, LA 70002
Phone: (504) 323.6000
Direct: (504) 500.1756
Fax: (504) 324.0757
Wes@santanablanchard.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 10, 2020, I electronically filed the foregoing with the Clerk

of Court by using the CM/ECF system which will send a notice of electronic filing to all parties.

**/s/ Wesley J. Blanchard**