```
                    UNITED STATES DISTRICT COURT

                    EASTERN DISTRICT OF LOUISIANA


QUANEECHA JOHNSON, ET AL.                        CIVIL ACTION

v.                                               NO. 19-13949

MARLIN GUSMAN, ET AL.                            SECTION "F"
```

ORDER AND REASONS

Before the Court is Sheriff Marlin Gusman's motion to dismiss the federal claims brought against him. For the reasons that follow, the motion is DENIED.

**Background**

This conditions-of-confinement case arises from a pretrial detainee's overdose on fentanyl inside Orleans Parish Prison. Members of the pretrial detainee's family sued Sheriff Marlin Gusman, the statutory "keeper" of the prison, under Louisiana law and 42 U.S.C. § 1983. They say that Sheriff Gusman put into place policies of inadequate staffing and monitoring—policies that permitted someone to smuggle into the prison the drugs that killed their loved one. The well-pleaded allegations of their complaint, accepted as true and viewed in their favor, follow.

1

Edward Patterson was arrested and booked into Orleans Parish Prison in January 2015. Fast forward nearly four years, to late November 2018. Patterson remained imprisoned awaiting trial. Someone saw him smoking an "unknown substance" and "displaying abnormal behavior." Suspecting an overdose, prison officials rushed him to the hospital, which eventually released him.

After this overdose scare, Patterson returned to the Orleans Parish Prison. Officials placed him in the same tier, with the same inmates and staff. That tier suffered from "severe staffing shortages and a lack of supervision." Worse, officials knew that "drugs and other contraband were routinely present" on the tier, but they did nothing to solve the problem.

Patterson overdosed five days later. Someone—a guard, an inmate, or a member of prison medical staff—smuggled fentanyl-laced drugs into the tier. When an inmate saw Patterson "collapsed and unconscious" in his cell, he alerted the guards. But the guards did not call emergency services immediately; they instead administered CPR and naproxen. When those efforts failed, nearly 30 minutes later, the guards finally called emergency services. It was too late. Patterson died of a fentanyl overdose at University Medical Center at 7:43 P.M. that night.

Patterson had three minor children: T.P., N.P., and E.P. Almost a year after their father's death, their mothers—Quaneecha

2

Johnson, Waynekka Randle, and Jasmene Ruffin——brought this 42 U.S.C. § 1983 action on their behalf. They sued those involved in prison management: the Sheriff of Orleans Parish, Marlin Gusman; the Compliance Director for the Orleans Parish Prison, Gary Maynard; and the outside healthcare provider for the Orleans Parish Prison, Wellpath, LLC. They also sued, as John Doe defendants, the guards assigned to Patterson's tier and the medical staffers who treated Patterson. They say that Patterson's death resulted from a "pattern of dereliction and neglect" by Orleans Parish Prison officials.

This "pattern" was "documented" in "lawsuits," including Eastern District of Louisiana Civil Action No. 12-859, LaShawn Jones v. Marlin Gusman.[1] That was a civil-rights action brought by inmates aiming to expose unconstitutional conditions at the Orleans Parish Prison. They succeeded. For the action attracted the attention of the Department of Justice and culminated in a 2013 consent judgment, which required Sheriff Gusman to "implement systemic and durable reforms to address pervasive and longstanding problems" at the prison. But reforms did not follow——at least not

---

[1] Sheriff Gusman asks the Court to judicially notice the order appointing the Compliance Director, and the plaintiffs do not oppose. Because the fact of the Jones litigation and related filings "can be accurately and readily determined from" orders of this Court, a source "whose accuracy cannot reasonably be questioned," judicial notice is appropriate. FED. R. EVID. 201(b)(2).

3

as quickly as the Jones plaintiffs would have liked. So, in April 2016, the Jones plaintiffs moved the Court to hold Sheriff Gusman in contempt and to appoint a receiver to implement the consent judgment. Before the Court could resolve the motion, however, the parties stipulated to the entry of an order appointing a "Compliance Director" for the Orleans Parish Prison.

Under the stipulated order, the Compliance Director has "final authority to operate the [Orleans Parish Prison] and all jail facilities, including authority over the entire prisoner population in the custody of the Orleans Parish Sheriff's Office[.]" But before the Compliance Director can make a decision "that materially impact[s] compliance with the consent judgment," he must "seek advice and/or approval from the Sheriff," unless doing so would cause "unreasonable delay."

Now, Sheriff Gusman invokes the stipulated order and moves to dismiss the federal claims against him for failure to state a claim. See FED. R. CIV. P. 12(b)(6). He says he cannot have official-capacity liability as a "final policymaker" for the Orleans Parish Prison because, under the terms of the stipulated order, the Compliance Director has all policymaking power. And the plaintiffs' individual-capacity claims fail, Gusman adds, because the facts alleged do not establish his "involvement" in Patterson's death.

4

I.

A complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief. FED. R. CIV. P. 8(a)(2). A party may move to dismiss a complaint that fails this requirement. See FED. R. CIV. P. 12(b)(6).

In considering a Rule 12(b)(6) motion, the Court accepts all well-pleaded facts as true and views those facts in the light most favorable to the plaintiff. Thompson v. City of Waco, Tex., 764 F.3d 500, 502 (5th Cir. 2014) (citing Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys, 675 F.3d 849, 854 (5th Cir. 2012) (en banc)). Conclusory allegations are not well pleaded and thus are not accepted as true. See Thompson, 764 F.3d at 502-03 (citing Iqbal, 556 U.S. at 678).

To overcome a Rule 12(b)(6) motion, "'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Gonzalez v. Kay, 577 F.3d 600, 603 (5th Cir. 2009) (quoting Iqbal, 556 U.S. at 678). A claim is facially plausible if it contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

"A complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations[.]" Twombly, 550 U.S. at 555. But it must contain "more than labels and conclusions, and

5

a formulaic recitation of a cause of action's elements will not do." Id. at 555. Ultimately, the Court's task is "to determine whether the plaintiff stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success." Thompson, 764 F.3d at 503 (citation omitted).

## II.

Sheriff Gusman contends the plaintiffs fail to state official-capacity federal claims against him. He invokes the stipulated order appointing the Orleans Parish Prison Compliance Director and says the document proves he is not a "final policymaker" as a matter of law. The plaintiffs respond with two arguments. First, Sheriff Gusman is a "final policymaker" because the stipulated order gives him the power to supervise the Compliance Director in some respects. Second, Sheriff Gusman's deficient policies survived the appointment of a Compliance Director and caused Patterson's death. The Court considers each argument in turn.

### A.

Claims against Sheriff Gusman in his official capacity are treated as claims against the entity he represents. See Bellard v. Gautreaux, 675 F.3d 454, 462 (5th Cir. 2012). To state § 1983 claims against that entity, the plaintiffs must plead facts that plausibly establish (1) a policymaker, (2) an official policy, and

(3) a violation of constitutional rights whose "moving force" is the policy or custom. Ratliff v. Aransas Cnty., Tex., 948 F.3d 281, 285 (5th Cir. 2020) (citing Piotrowski v. City of Houston, 237 F.3d 567, 578 (5th Cir. 2001)). Only the policymaker element is at issue here.

State law governs whether an official is a "policymaker." Webb v. Town of Saint Joseph, 925 F.3d 209, 215 (5th Cir. 2019). To identify the "policymaker," the Court looks to "'state and local positive law, as well as custom or usage having the force of law.'" Id. at 216 (quoting Jett v. Dallas Ind. Sch. Dist., 491 U.S. 701, 737 (1989)). Louisiana law instructs that the sheriff is the "final policymaker" for the public jail of his parish. See LA. REV. STAT. §§ 15:704, 13:5539(C); Thompkins v. Belt, 828 F.2d 298, 304 n.8 (5th Cir. 1987). Accordingly, because Sheriff Gusman is the Sheriff of Orleans Parish, he is the "final policymaker" for the Orleans Parish Prison. See LA. REV. STAT. §§ 15:704, 13:5539(C).

Overlooking these authorities, Sheriff Gusman says he is not the "final policymaker" because the stipulated order appointing the Orleans Parish Prison Compliance Director stripped him of policymaking power and created a receivership. He says the language of the stipulated order, standing alone, proves that the Compliance Director is the "final policymaker" for the Orleans Parish Prison.

7

The Court disagrees.[2] To begin, the stipulated order is not "state law" and is therefore irrelevant to the policymaker analysis. See Webb, 925 F.3d at 216. But even if the order were relevant, Sheriff Gusman misreads it. His argument relies on an interpretation of it that is objectively wrong—an interpretation that exaggerates the order's effect on his power to make prison policy. The stipulated order did not strip Sheriff Gusman of all policymaking power; a quasi-veto power remained intact: the stipulated order bars the Compliance Director from making a "decision[] that materially impact[s] compliance with the consent judgment" without first "seek[ing]" Sheriff Gusman's "advice and/or approval." That Sheriff Gusman retains such supervisory powers suggests that he remains the "final policymaker" for the Orleans Parish Prison. See, e.g., Adv. Tech. Bldg. Solutions v. City of Jackson, Miss., 817 F.3d 163, 167 (5th Cir. 2016) (holding

---

[2] Sheriff Gusman fails to invoke any opinion accepting his novel policymaker argument. He instead seeks refuge in the unremarkable proposition that the Compliance Director resembles a receiver in some respects. And from there he reasons that, because the Orleans Parish Prison is under a quasi-receivership, it cannot have official-capacity liability. But Sheriff Gusman's argument misapprehends the scope of the Compliance Director's authority. That authority—to implement the consent judgment through actions subject to Sheriff Gusman's "advice and/or approval"—is nothing like the expansive powers exercised by receivers over municipalities in the opinions Sheriff Gusman invokes to support his policymaker argument. See Canney v. City of Chelsea, 925 F. Supp. 58, 67-68 (D. Mass. 1996); Fantasia v. Office of Receiver of Comm'n on Mental Health Servs., No. 01-1079-LFO, 2001 WL 34800013, at *5-6 (D.D.C. Dec. 21, 2001).

8

that the entity with the "right of final review" is the final policymaker); Webster v. City of Houston, 735 F.2d 838, 841 (5th Cir. 1984) (en banc) (noting that policymakers are supervised only "as to the totality of their performance"). So, contrary to Sheriff Gusman's argument, the language of the stipulated order is not dispositive. And on this record, viewing only the language of that order and the factual allegations of the plaintiffs' complaint, the Court cannot conclude that the Compliance Director—rather than Sheriff Gusman—is the "final policymaker" for the Orleans Parish Prison.

Besides, Sheriff Gusman's position clashes with the case literature: the only courts to consider his policymaker argument have rejected it. See Oliver v. Gusman, No. 18-7845, 2020 WL 1303493, at *9-10 (E.D. La. Mar. 19, 2020); Crittindon v. Gusman, No. 17-512, 2020 WL 377016, at *2 (M.D. La. Jan. 23, 2020). And for good reason; the argument is not just contrary to law—it is bad policy. Recall that the consent judgment and stipulated order were entered because of "pervasive and longstanding problems" at the Orleans Parish Prison under Sheriff Gusman's leadership. Through his policymaker argument, Sheriff Gusman invites the Court to reward him—through a grant of official-capacity immunity—for creating the "pervasive and longstanding problems" that required

the consent judgment and stipulated order in the first place. The Court declines the invitation.

Even if the Court accepted Sheriff Gusman's policymaker argument, however, dismissal of the plaintiffs' official-capacity claims would be unwarranted. The plaintiffs allege facts—taken as true and viewed in their favor—sufficient to show that Patterson's death was caused by Gusman-made policies that survived the appointment of the Orleans Parish Prison Compliance Director. The Court therefore denies Sheriff Gusman's motion to dismiss the plaintiffs' official-capacity federal claims and turns to the plaintiffs' individual-capacity federal claims.

### III.

Sheriff Gusman next contends that the plaintiffs fail to state individual-capacity federal claims against him because they do not allege his "involvement" in Patterson's death and so cannot overcome his qualified-immunity defense.

### A.

Qualified immunity protects government officials from civil liability so long as their conduct "'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800,

10

818 (1982)). Because the focus is on whether the official had "fair notice" that his conduct was unlawful, "reasonableness is judged against the backdrop of the law at the time of the conduct." Brosseau v. Haugen, 543 U.S. 194, 198 (2004) (per curiam).

A right is not "clearly established" unless precedent places the "'constitutional question beyond debate.'" Kisela v. Hughes, 138 S. Ct. 1148, 1152 (2018) (quoting White v. Pauly, 137 S. Ct. 548, 551 (2017)). Courts may not "define clearly established law at a high level of generality." City and Cnty. of San Francisco v. Sheehan, 135 S. Ct. 1765, 1775-76 (2015) (citation omitted). They must instead locate a controlling case that "squarely governs the specific facts at issue." City of Escondido v. Emmons, 139 S. Ct. 500, 503 (2019) (per curiam).

When a defendant invokes qualified immunity at the pleadings stage, as Sheriff Gusman has here, the plaintiffs "bear the burden of pleading facts that demonstrate liability and defeat immunity." Shaw v. Villanueva, 918 F.3d 414, 417 (5th Cir. 2019). To meet that burden, the plaintiffs must allege facts sufficient to satisfy both prongs of the qualified-immunity analysis: (1) that Sheriff Gusman violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the

challenged conduct. Id. at 417 (citing Whitley v. Hanna, 726 F.3d 631, 638 (5th Cir. 2013)). The Court considers each prong in turn.

1.

The first prong requires the plaintiffs to allege facts showing that Sheriff Gusman violated a statutory or constitutional right. Shaw, 918 F.3d at 417. Because Patterson was a pretrial detainee at the time of his death, his constitutional rights "flow from both the procedural and substantive due process guarantees of the Fourteenth Amendment." Hare v. City of Corinth, Miss., 74 F.3d 633, 639 (5th Cir. 1996) (en banc). Patterson's due process protections as a pretrial detainee are "'at least as great as the Eighth Amendment protections available to a convicted prisoner.'" Id. at 639 (quoting City of Revere v. Massachusetts Gen. Hosp., 463 U.S. 239, 244 (1983)).

To state a § 1983 claim against Sheriff Gusman for violating Patterson's Fourteenth Amendment rights, the plaintiffs must allege facts establishing "subjective deliberate indifference" by Sheriff Gusman. Alderson v. Concordia Parish Corr. Facility, 848 F.3d 415, 419 (5th Cir. 2017) (per curiam) (citing Hare, 74 F.3d at 643). This standard requires a showing that Sheriff Gusman "knew of and disregarded a substantial risk of serious harm." Alderson, 848 F.3d at 420. To constitute deliberate indifference, the "official conduct must be 'wanton,' which is defined to mean

12

'reckless.'" Id. at 420 (quoting Johnson v. Treen, 759 F.2d 1236, 1238 (5th Cir. 1985)). Of course, supervisory officials like Sheriff Gusman are not vicariously liable for the conduct of those they supervise. Alderson, 848 F.3d at 420. But they are "accountable for their own acts of deliberate indifference and for implementing unconstitutional policies that causally result in injury to the plaintiff." Id.

Here, the plaintiffs allege that Sheriff Gusman violated Patterson's Fourteenth Amendment rights by implementing "unconstitutional policies and practices" at the prison, including: "inadequate staffing," failing to "adequately monitor and supervise inmates," and failing to "provide adequate medical attention." The plaintiffs allege that Sheriff Gusman knew about these conditions, appreciated the risk of harm they created, and did nothing about them. They adequately allege that Sheriff Gusman implemented unconstitutional policies that resulted in Patterson's death. See Alderson, 848 F.3d at 420. Accordingly, the plaintiffs have alleged a Fourteenth Amendment violation. Having resolved the first qualified-immunity prong in the plaintiffs' favor, the Court turns to the second.

2.

The second prong requires the plaintiffs to show that Patterson's Fourteenth Amendment rights were clearly established

13

at the time of Sheriff Gusman's alleged misconduct, in November and December of 2018. See Shaw, 918 F.3d at 417. That showing is easily made.

For 30 years, it has been clearly established that a prison official will be liable for acts resulting in the violation of a pretrial detainee's constitutional rights, provided the official acts with "subjective deliberate indifference." Jacobs v. West Feliciana Sheriff's Dep't, 228 F.3d 388, 394 (5th Cir. 2000) (citing Hare, 74 F.3d at 650).

                              *   *   *

The plaintiffs have pleaded facts sufficient to satisfy both prongs of the qualified-immunity analysis. Because the plaintiffs have met their "burden of pleading facts that demonstrate liability and defeat immunity," Shaw, 918 F.3d at 417, the Court denies Sheriff Gusman's motion to dismiss the plaintiffs' individual-capacity federal claims.

IV.

The plaintiffs have stated plausible federal claims against Sheriff Gusman. Accordingly, IT IS ORDERED: that Sheriff Gusman's motion to dismiss is DENIED.

New Orleans, Louisiana, May 13, 2020

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE

15